UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS AGUILAR, | ) | |
| | ) | No.   20-cv-6668 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| | ) | |
| ROLAND CORPORATION U.S., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, LUIS AGUILAR, by counsel, Moor Law Office, P.C., complaining of ROLAND CORPORATION, U.S., states as follows for his Complaint at Law:

1. This is an action for employment discrimination brought to secure relief, legal and equitable, for discrimination based on race and retaliation, brought pursuant to 42 U.S.C. §1981, as amended ("Section 1981") and for relief under state law. The jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights guaranteed by federal law, which rights provide for injunctive and compensatory relief for illegal discrimination in employment.

**Jurisdiction and Venue**

2. Jurisdiction over this case is conferred on the Court by 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1988, and 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the District and the unlawful employment practices alleged herein were committed in the District.

**Parties**

4. Plaintiff Luis Aguilar ("Plaintiff") currently resides, and at all relevant times alleged herein resided, in the City of Chicago. Plaintiff is an adult Hispanic male.

5. Defendant Roland Corporation U.S., (Roland), is a corporation authorized to do business in Illinois, and which does business in this District.

**General Allegations**

6. Plaintiff was first employed at Roland Corporation U.S. in January of 2008.

7. Roland Corporation U.S. is a Corporation that manufactures, markets, and sells musical devices and instruments to retailers and wholesalers throughout the United States.

8. Between January, 2008 and August 8, 2019, the Plaintiff worked at Roland Corporation U.S., out of Illinois, under various titles with duties to travel throughout his sales territory consisting of certain Midwestern states including North Dakota, South Dakota, Nebraska, Kansas, Minnesota, Iowa, Missouri, Illinois, Wisconsin, and Indiana in order to market and sell Roland products to retailers within his district.

9. Plaintiff, at all relevant times, performed his job in a manner that met or exceeded the expectations of his employer and prior to the discrimination described below was never disciplined, written up, or issued a written or verbal warning of any kind.

10. Plaintiff began with Roland as a sales support associate with duties throughout the entire United States. This position required him to travel and meet with Roland's salespersons to educate them on new Roland products and assist them with any issues as they arose.

11. Plaintiff was promoted multiple times at Roland based on his meritorious performance. In or around 2009 Plaintiff was promoted to national manager. In this position, Plaintiff travelled throughout the Continental United States, Mexico and Puerto Rico in order to

establish brand new Roland retail stores. In or around 2012 Plaintiff was promoted to a new position as a "self-support associate" which required him to travel throughout the United States to assist salespersons with product education and product upkeep. In 2014, Plaintiff was promoted to the position of District Sales Manager. This position required Plaintiff to travel throughout a designated territory and meet with owners and managers of retailers interested in purchasing Roland products to demonstrate the products and process orders.

12. Plaintiff received a change of title and an increase in base salary and sales incentives each time he was promoted. As a District Sales Manager, Plaintiff reported directly to David Rivard the Sales Director who oversaw all sales for the Midwest and the West Coast regions.

13. The entire time Plaintiff was employed as a District Sales Manager Plaintiff was the only Hispanic District Sales Manager. All other District Sales Managers and supervisors were white, non-Hispanic men.

14. At or around 2011, a video was created by Ed Diaz, a product manager with Roland depicting Plaintiff as a stereotypical Hispanic migrant worker in which Plaintiff was depicted flying on a plane from Cuba to New York to work as a gardener. The video was distributed throughout the company on Roland's email server.

15. Plaintiff was made aware that the video was still circulating in or around 2017 when another Roland employee showed the video to Plaintiff. During his time with the company, Roland employees bullied Plaintiff because of his race, referring to Plaintiff as "Mexican," "gardener," "terrorist" and other offensive racial stereotypes.

16. In or around 2013, at a sales meeting in the double tree hotel in Commerce, California, a coworker told Plaintiff, "It is too bad you did not bring your wife so I could F***

her." After he said that, the coworker told other employees not to talk to Plaintiff because he was "Mexican."

17. In or around 2015 and continuing until Plaintiff's eventual termination Executives at Roland including Jay Wannamaker (CEO of Roland) and Tony Price (VP of Sales) regularly sent pictures of Donald Trump accompanied with phrases such as "build the wall," to Plaintiff on Company phones in group messages as a means to single out and intimidate him.

18. In or around 2016, David Rivard told Roland employees that Plaintiff's house "smelled like s***" at a dinner with other Roland employees.

19. After Donald Trump was elected President in 2016, Clients would text Plaintiff with messages about building a wall at the Mexican border and other intimidating messages because of Plaintiff's Hispanic heritage. Supervisors at Roland took no steps to protect Plaintiff from this form of harassment.

20. On or around 2016, a client in Nebraska, Dietz Music, began harassing Plaintiff. The client called Roland and claimed they had "personality conflicts" with Plaintiff despite never having met Plaintiff. On information and belief this was because Plaintiff has a stereotypically Hispanic name. David Rivard documented the complaints in Plaintiff's personnel file and did not take any steps to protect Plaintiff from the customer. When Plaintiff asked for support on this account, negative comment was placed in his personnel file.

21. In or around 2016, Plaintiff's supervisor David Rivard notified Plaintiff of a complaint against him stating he was "messy." Rivard told Plaintiff something along the lines that, "it was not his fault because of the way he was raised."

22. In or around 2016, Plaintiff was ordered to drive overnight to Nebraska from Chicago and then back to Madison, Wisconsin. Plaintiff emailed his supervisor with concerns

about the long drive. Plaintiff was forced to work for 36 straight hours (including travel). Based on information and knowledge, Plaintiff alleges that other non-Hispanic sales managers were given more favorable treatment because they were given more reasonable time frames to complete their duties in order to avoid long and continuous driving stints.

23. Plaintiff alerted his supervisors that he was being pulled over frequently because of his race when he was driving through his territory. Plaintiff alerted his supervisor that other employees were traveling with illegal drugs and trying to find drugs on business trips. No action was taken to discipline the other employees despite clear violations of Company policy.

24. In or around 2017, Plaintiff's supervisor David Rivard called Plaintiff and told him that Dana Toma, another employee of Roland who was sharing a hotel room with Plaintiff had complained that Plaintiff was messy. The allegation was false but Rivard told Plaintiff that it was not his fault, stating that Hispanic men are messy and dirty.

25. In or around 2017, Plaintiff was prescribed anti-depressants by a psychiatrist as a result of the harassment he was enduring at work. By 2019, as a result of David Rivard and Roland's constant harassment Plaintiff's mental condition had deteriorated to the point where he was meeting with 3 psychiatrists for treatment. Plaintiff was prescribed sleeping pills, medications for his anxiety, and the dosage for the anti-depressants he was prescribed was increased. Plaintiff was also taking ibuprofen daily due to soreness and fatigue from his anxiety and insomnia.

26. In 2018, Plaintiff had achieved sales goals which entitled him to sales bonuses. Roland refused to recognize Plaintiff's sales numbers and compensate him for the work he had done.

27. In or around 2018, Plaintiff acquired a new client, V.N. Innovations an e-commerce retailer. This client was one of Plaintiff's largest accounts. Plaintiff's supervisor David Rivard

interfered with Plaintiff's new account by ordering the Plaintiff to use deceptive sales tactics, by failing to provide Plaintiff adequate support on the new account, and by failing to perform administrative duties which resulted in delayed shipments and deprived the credit needed to finalize Plaintiff's sales. All of this led to a large decline in sales and Plaintiff's expected commission.

28. Defendant was constantly harassed verbally and over email to contact V.N. Innovations to tell V.N. Innovations to raise the price they were selling Roland products. No other Sales manager was given similar instruction for any other account. Defendant singled out this account in order to make an example out of Plaintiff and interfere with his commissions.

29. In or around March 2018, Plaintiff began to document his complaints with Human Resources about David Rivard. Human Resources advised Plaintiff not to communicate about his issues with Rivard to others in the company.

30. As a result of his complaint to Human Resource, Roland's harassment of Plaintiff became coordinated and increased in frequency. The credit department began to deny credit to Plaintiff's clients resulting in delayed and cancelled shipments of Plaintiff's client's orders. This was purposeful in order to get Plaintiff's clients to complain about Plaintiff and deprive Plaintiff of commission from sales. These errors forced Plaintiff to spend hours going through paperwork to correct these issues and ruined the relationship he had developed with his clients. No other Sales Director was experiencing similar issues with the Credit Department. Plaintiff was told by management to not complain about these issues because "it would make things more difficult."

31. After Plaintiff had filed his complaint with Human Resources, Rivard began to micro-manage Plaintiff. Rivard told plaintiff not to rent certain cars considered luxury cars

6

because the cars appeared "too nice for him" even though Plaintiff obtained them at reduced rates. No other employee was scrutinized in a similar manner."

32. In or around 2019 Roland had a company wide sales competition for a Boss Guitar product. David Rivard excluded Plaintiff's sales data which would have earned him a trip to Japan in favor of a white salesperson with lower sales.

33. David Rivard directed Plaintiff not to deal with customers after Plaintiff complained of harassment. Rivard failed to assign a new sales director to these clients. Rivard instructed Plaintiff not to service these accounts. When product shipments did not arrive or other issues with the account arose, Rivard attributed these issues to Plaintiff and documented these issues in Plaintiff's personnel file. Rivard then used these issues to embarrass and shame Plaintiff in front of other company employees at meetings.

34. Plaintiff was terminated on August 8, 2019.

35. Plaintiff at no time quit Roland Corporation U.S.

36. Plaintiff was unjustly fired by Roland Corporation U.S. on August 8, 2019.

## COUNT I – § 1981 Race Discrimination

37. Plaintiff adopts paragraphs 1 – 36 above as paragraph 37 of Count I, as if fully set forth herein.

38. Defendant violated § 1981 when a supervisor racially harassed Plaintiff creating a hostile work environment.

39. Defendant violated § 1981 when it failed to discipline white employees who held the same position as Plaintiff who had racially harassed Plaintiff, creating a hostile work environment.

40. Defendant violated § 1981 when it racially harassed Plaintiff by failing to investigate claims by a Plaintiff about harassment from supervisors, other employees, and clients, creating a hostile work environment.

41. Defendant violated § 1981 by discharging the Plaintiff because he was Hispanic and because he had complained about the disparate treatment that he had endured at Roland U.S., Inc.

42. Defendant is strictly liable for the racial harassment committed by David Rivard and supervisors and its conduct in terminating Plaintiff was unreasonable, or alternatively, was willful and wanton or intentional.

43. As a proximate result of Defendant's illegal indifference to his federally protected rights, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, LUIS AGUILAR, by counsel, respectfully prays that this Court provide the following legal remedies:

a. Award Plaintiff reinstatement, lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b. Enjoin Defendant from discriminating against black workers;

c. Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d. Award compensatory damages;

e. Award punitive damages; and

f. Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT II - § 1981 Retaliation

44. Plaintiff adopts paragraphs 1 – 36 above as paragraph 44 of Count III, as if fully set forth herein.

45. Roland Corporation, U.S. violated 42 U.S.C. § 1981 by retaliating against Plaintiff for exercising his right to report what he reasonably believed to be racial harassment by a supervisor and inflicted materially adverse actions upon him by terminating his employment.

46. Plaintiff's complaint to his employer of the above described racial discrimination against Hispanic workers was a protected activity.

47. Roland Corporation, U.S. violated 42 U.S.C. § 1981 by discharging the Plaintiff for complaining about racial discrimination.

48. A substantial factor in the Plaintiff's termination was his complaining about racial discrimination.

49. As a proximate result of Roland Corporation, U.S., Inc.'s illegal retaliation, Plaintiff has suffered depression, anxiety, emotional distress, physical illness, damage to his reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, LUIS AGUILAR, by counsel, respectfully prays that this Court provide the following equitable and legal remedies:

   a. Award Plaintiff reinstatement, lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

   b. Award Plaintiff the costs of litigation, including reasonable attorney's fees and expert fees and expenses;

   c. Award compensatory damages;

   d. Award punitive damages; and

    e.    Any other relief that this Court deems just.

Plaintiff demands trial by jury.

### COUNT III – Intentional Infliction of Emotion Distress

50. Plaintiff adopts paragraphs 1 – 36 above as paragraphs 50 of Count III, as if fully set forth herein.

51. As a result of the extreme, outrageous and intentional conduct alleged above, which was a clear violation of the Roland's policy on racial harassment and of the existing law, the Plaintiff suffered severe emotion distress.

52. As a proximate result of Defendant's illegal conduct, Plaintiff has suffered anxiety, emotional distress, physical illness, damage to his reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, LUIS AGUILAR, by counsel, respectfully prays that this Court enter Judgment against the ROLAND CORPOPRATION, U.S. for compensatory damages, punitive damages, and the costs of this suit.

Plaintiff demands trial by jury.

                                                  /s/ Edward R. Moor
                                                Attorney for Plaintiff

Edward R. Moor, ARDC# 6205169
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
312-726-6207
erm@moorlaw.net

*Attorney for Plaintiff*