# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUIS AGUILAR, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 20 C 6668 |
| v. | )<br>) Judge Sara L. Ellis |
| ROLAND CORPORATION U.S., | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Roland Corporation U.S. ("Roland") terminated Plaintiff Luis Aguilar, a Hispanic male, from his sales position on August 8, 2019. While working for Roland, Aguilar allegedly experienced repeated harassment concerning his race, including being called Mexican, gardener, terrorist, and other racial stereotypes. Aguilar brings race discrimination and retaliation claims under 42 U.S.C. § 1981 and a state law claim for intentional infliction of emotional distress ("IIED"). Roland now moves to dismiss Aguilar's claim for IIED (Count III). Because the complaint asserts that Aguilar's supervisors subjected him to both racial slurs and an abuse of power, at this stage, Aguilar has sufficiently alleged outrageous conduct to allow that claim to proceed to discovery.

## BACKGROUND[1]

### I. Aguilar's Employment History

Roland manufactures, markets, and sells musical devices and instruments to retailers and wholesalers throughout the United States. Aguilar started working at Roland in January 2008 as

---

[1] The Court takes the facts in the background section from Aguilar's complaint and presumes them to be true for the purpose of resolving Roland's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

1

a sales support associate, a role which required him to travel and meet with Roland's salespersons to educate them on its new products and assist them with issues as they arose. Until 2019, Aguilar continued to work under various titles at Roland, traveling within his sales territory in the Midwest, which included North Dakota, South Dakota, Nebraska, Kansas, Minnesota, Iowa, Missouri, Illinois, Wisconsin, and Indiana, to market and sell Roland products to retailers. Every time Roland promoted Aguilar, he received a change of title and an increase in base salary and sales incentives. In about 2009, Aguilar received a promotion to national manager, which required him to travel throughout the United States, Mexico, and Puerto Rico to establish new Roland retail stores. Then in 2012, Aguilar again received another promotion to a self-support associate, which required him to travel throughout the United States to educate salespersons regarding Roland's products and product upkeep. And in 2014, Roland promoted Aguilar to a district sales manager position. This new position required him to travel throughout a designated territory to meet with owners and managers of retailers interested in purchasing Roland products to demonstrate the products and process orders. Aguilar, in this position, reported directly to David Rivard, the sales director overseeing all sales for the Midwest and the West Coast regions. Roland terminated Aguilar on August 8, 2019.

## II. Alleged Discriminatory Conduct Towards Aguilar

During his time with Roland, employees allegedly bullied Aguilar because of his race, calling him Mexican, gardener, terrorist, and other racial stereotypes. In roughly 2011, Ed Diaz, a product manager with Roland, created a video depicting Agular as a Hispanic migrant worker flying on a plane from Cuba to New York to work as a gardener, which Diaz then distributed within the company using its email server. Aguilar became aware that the video was still circulating in 2017 when another employee showed him the video. Other Roland employees also

called Aguilar messy and dirty on a number of occasions, including one in 2016, in which his supervisor, David Rivard stated "it was not [Aguilar's] fault because of the way he was raised," and in 2017, when again Rivard told Aguilar it was not his fault because "Hispanic men are messy and dirty." Doc. 1 ¶¶ 21, 24. Rivard further told other employees in 2016 that Aguilar's house "smelled like s***" at a work-related dinner. *Id*. ¶ 18.

In 2015 and up to Aguilar's termination in 2019, Roland's executives, including Jay Wannamaker, Roland's chief executive officer ("CEO") and Tony Price, the vice president of sales, routinely sent pictures of Donald Trump with phrases such as "build the wall" to Aguilar using company phones in group messages. *Id*. ¶ 17. After Trump became President in 2016, clients started to text Aguilar with similar messages regarding building a wall at the Mexican border and other messages insinuating his Hispanic heritage.

Further, in 2016, Dietz Music, a client of Roland, began harassing Aguilar, calling Roland and claiming it had "personality conflicts" with Aguilar, though Aguilar never met with Dietz in person. *Id*. ¶ 20. Aguilar believed this occurred because he has a stereotypically Hispanic name. Rivard documented these complaints in Aguilar's personnel file and when Aguilar asked for additional support on this account, Aguilar received an additional negative comment in his personnel file. The same year, Aguilar had to drive overnight to Nebraska from Chicago and back to Madison, Wisconsin, forced to work for 36 straight hours. Aguilar asserts that Roland gave the non-Hispanic sales managers more reasonable time frames to complete their responsibilities and avoid long travel time. Aguilar also alerted his supervisors that he got pulled over frequently because of his race when driving through his territory.

In 2018, Aguilar acquired a new client, V.N. Innovations, one of his largest accounts. Rivard interfered with this new account, ordering Aguilar to use deceptive sales tactics, failing to

3

provide adequate support, and failing to perform administrative duties, all of which resulted in delayed shipments and deprived Aguilar of the credit needed to finalize his sales. Rivard continued to harass Aguilar, both verbally and over email, to contact V.N. Innovations and have it raise the prices at which it sold Roland's products. No other sales manager received the same instruction. In March 2018, Aguilar started to document his complaints with human resources ("HR") concerning Rivard, but HR advised him not to communicate this issue to others in the company. As a result of this complaint, Aguilar was harassed more frequently, and the harassment became more coordinated. The credit department started to deny credit to Aguilar's clients, which resulted in delayed and cancelled shipment of his orders. This was done with the intention of forcing Aguilar's clients to complain to Roland about Aguilar and thus deprive him of his commission from sales. Rivard also began to micro-manage Aguilar after he filed his complaint with HR. For example, Rivard told Aguilar not to rent luxury cars because they were too nice for him despite the reduced rates for said cars. No other sales manager was scrutinized in a similar fashion. Management at Roland, however, told Aguilar not to raise these issues because it would make things far more difficult for him.

As result of the harassment he endured at work, in about 2017, a psychiatrist prescribed anti-depressants to Aguilar. By 2019, his mental condition had deteriorated to the point where he was meeting with three psychiatrists for treatment, received a prescription for sleeping pills and medications for his anxiety, and doctors increased the dosage for the anti-depressants he was taking.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990).  In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).  To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

To recover for IIED, Aguilar must allege that the "(1) defendant['s] conduct was extreme and outrageous; (2) defendant[] either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendant[] conduct actually caused severe emotional distress."  *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)).  Roland argues that Aguilar has failed to sufficiently plead outrageous conduct so as to state an IIED claim.  Aguilar responds that he suffered racial harassment and discrimination over a period of years that amounted to extreme and outrageous conduct sufficient to support his claim.

To be considered extreme and outrageous, conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)).  Courts are reluctant to allow IIED claims to proceed in

5

the employer/employee context, "the concern being that doing so would authorize IIED claims by most workers who are terminated or even disciplined." *Reed v. Colo. Tech. Univ.*, No. 15 C 3368, 2016 WL 1019830, at *5 (N.D. Ill. Mar. 15, 2016) (citing *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)). But the Court may find an IIED claim actionable in the employer/employee context "where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491.

Here, Aguilar alleges that his supervisor, Roland's CEO, and its vice president of sales all engaged in systematic racial harassment that went beyond the "typical on-the-job disagreements" because they had power over Aguilar's work. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605–06 (7th Cir. 2006). Aguilar points to *Naeem* as instructive, as the court determined that "the actions taken against [the plaintiff] clearly go far beyond typical on-the-job disagreements" and the actions are similar to the facts at issue here, including "publicly criticizing [the plaintiff's] work during meetings with other supervisors." *Id.* Roland, however, contends that nowhere in the complaint does Aguilar allege that Roland forced Aguilar to do any physical tasks knowing that he was susceptible to emotional distress or that Roland purposely sabotaged his work. Rather, Roland argues that what Aguilar has alleged here is no different than allegations asserted in *McKay v. Town & Country Cadillac, Inc.*, 991 F. Supp. 966 (N.D. Ill. 1997), and *Shamim v. Siemens Industries, Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012). In both cases, although the plaintiffs were subjected to abusive and offensive derogatory slurs and treated differently than other managers within the companies, the court determined that those allegations "individually and cumulatively, amount to little more than annoyances and insults." *McKay*, 991 F. Supp. at 972; *Shamin*, 854 F. Supp. 2d at 512.

But courts have also recognized that extreme and outrageous conduct may arise "where defendants exercised great economic leverage over a plaintiff." *Honaker*, 256 F.3d at 491; *see Milton v. Ill. Bell Tel. Co.*, 101 Ill. App. 3d 75, 79 (1981) ("The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion." (citations omitted)). Here, Aguilar not only alleges he was subjected to derogatory comments and racial slurs, the complaint also alleges that his supervisor forced him to engage in deceptive sales practices to the detriment of his sales and subsequent commissions. And the complaint further alleges that Aguilar's supervisor heavily interfered with his work. Thus, though the complaint does set forth minimal facts regarding the IIED claim, at this stage, Aguilar has sufficiently alleged that Roland's actions amounted to extreme and outrageous conduct. Although Aguilar may not ultimately establish this element, the Court finds that he has met his pleading burden at this stage.

## CONCLUSION

For the foregoing reasons, the Court denies Roland's motion to dismiss Aguilar's intentional infliction of emotional distress claim [13].

Dated: June 1, 2021

SARA L. ELLIS
United States District Judge